LYDE LASSITER BAKER, MARY ALICE NORVILLE AND WILLIAM EARL LASSITER v. TRAVIS D. MURPHREY.

(Filed 20 May, 1959.)

**1. Husband and Wife § 5—**
A deputy clerk has authority to take the certificate of a married woman in a conveyance by her to her husband. G.S. 52-12, G.S. 47-1.

**2. Mortgages § 31g—**
A decree for the sale of lands under foreclosure of a mortgage or deed of trust is an interlocutory order and the bid at the sale is but a proposition to buy, and confirmation is essential to the consummation of the sale and the transfer of title.

**3. Mortgages § 31b: Executors and Administrators § 20—**
Where the mortgagor dies intestate after decree of foreclosure but prior to confirmation, the mortgagor's heirs at law, to whom the land descends subject to be sold to make assets to pay debts, are necessary parties and are entitled to be heard as to whether the sale by the commissioners should be confirmed, and as to heirs who are not made parties the court is without jurisdiction to decree confirmation, and such heirs are entitled to set aside the foreclosure and to an adjudication that they own their proportionate part of the lands subject to outstanding liens.

APPEAL by plaintiffs from *Thompson, Special J.*, October 1958, (A) Term, of GREENE.

Civil action to have plaintiffs declared the owners of an undivided one-sixth interest in two tracts of land in Greene County containing 22½ acres and 1¼ acres, respectively, and for an accounting of rents and profits from 1941 to date.

John J. Murphrey died September 20, 1941, intestate, survived by his widow, Eliza Murphrey, and by the following heirs at law: Five children, Travis D. Murphrey (defendant herein), Addie M. May, Willie Murphrey, Annie Murphrey Rouse, and Mary Murphrey Linton, and four grandchildren, the children of Maybelle Murphrey Lassiter Gay, a daughter who predeceased John J. Murphrey, namely, Joseph Hugh Lassiter, Mary Alice Norville, Lyde Lassiter Baker, and William Earl Lassiter.

Plaintiffs assert title as heirs at law of John J. Murphrey, their grandfather, and of Joseph Hugh Lassiter, their brother, who died subsequent to the death of John J. Murphrey.

In the documents referred to below, the spelling is "Murphy." For convenience, we adopt the spelling used in the pleadings, to wit, "Murphrey."

On September 26, 1941, T. D. Murphrey, defendant herein, qualified as administrator of the estate of John J. Murphrey, and served

as such administrator until October 1, 1942, on which date he filed his final account with the clerk of superior court. His final account as administrator shows total receipts (all on September 29, 1941) of $306.32, "rents from sale of tobacco," and disbursement thereof (on or prior to November 30, 1941) in payment of crop liens, administration expenses and the balance of $6.35 "Paid to Mrs. J. J. Murphy, Year's support."

Plaintiffs offered the record of a deed dated January 7, 1928, duly recorded, by which Eliza J. Murphrey, "in consideration of One Dollar and the assumption of Mortgage indebtedness," purported to convey the two tracts to John J. Murphrey in fee simple. After full warranties, these words appear: "Except Mortgage held by Ben Albritton, and Lang & Tyson."

Plaintiffs offered the judgment roll in a civil action entitled *"Farmville Oil and Fertilizer Company v. John J. Murphy, Eliza Murphy, Richard Grimsley, John Hill Paylor, Trustee, J. H. Harris, James H. Harper, J. T. Taylor, and T. M. Dail, partners, trading as J. T. Taylor & Company,"* relating to the 22½-acre tract.

This was an action to foreclose a mortgage dated January 14, 1928, executed and delivered by John J. Murphrey and wife, Eliza Murphrey, as security for the payment of their $1,106.00 promissory note to Tyson-Lang Company, then owned by the plaintiff. The defendants, other than John J. Murphrey and Eliza Murphrey, were joined because of their claims under other mortgages. Grimsley, the only defendant who answered, asserted that he owned a $450.00 mortgage note, executed and delivered by John J. Murphrey and wife, Eliza Murphrey, to B. E. Albritton, and that this mortgage was a first lien on the 22½-acre tract. Judgment dated June 27, 1941, entered at June Term, 1941, adjudged that plaintiff recover of John J. Murphrey and Eliza Murphrey the sum of $1,106.00 with interest thereon at 6% per annum from January 1, 1931, together with costs; and, in said judgment, commissioners were appointed to sell the 22½-acre tract and disburse the proceeds as provided therein.

At the commissioners' sale on October 20, 1941, J. H. Harris, a defendant in said action, was the last and highest bidder at $2,500.00. He assigned his bid to T. D. Murphrey. The sale was confirmed November 12, 1941, by decree of the resident superior court judge, which ordered that the commissioners convey the property to T. D. Murphrey upon his payment of said purchase price. The decree of confirmation directed that the commissioners disburse the $2,500.00 as follows: First, to the payment of the costs of the action, including an allowance of $150.00 to the commissioners; second, to the payment of

taxes; third, to the payment of the mortgage indebtedness due Grimsley; and fourth, "the residue to be paid to the Farmville Oil and Fertilizer Company on Judgment entered 'at June Term, 1941." By deed dated November 12, 1941, the commissioners purported to convey to T. D. Murphrey in fee simple the said 22½-acre tract. The commissioners' final report shows their receipt of $2,500.00 from T. D. Murphrey and their disbursement thereof as provided in the decree of confirmation. T. D. Murphrey is Travis D. Murphrey, defendant herein.

John J. Murphrey and Eliza Murphrey were duly served with summons in said foreclosure action. Neither filed answer. The said judgment was entered at June Term, 1941. The commissioner's sale, the report thereof, decree of confirmation, etc., occurred after September 20, 1941, the date of John J. Murphrey's death.

The plaintiffs were not made parties to said foreclosure action and none was represented therein by a guardian *ad litem* or any other legal representative. When John J. Murphrey died, the ages of plaintiffs were as follows. Lyde Lassiter Baker was 18, William Earl Lassiter was 13, and Mary Alice Norville was 4. (Note: The other heirs at law of John J. Murphrey were not made parties to said foreclosure action and are not parties to this action.)

Plaintiffs offered the following evidence relating specifically to the 1¼-acre tract, which was not involved in said foreclosure action, viz.: (1) Defendant's admission that John J. Murphrey and wife, Eliza Murphrey, by mortgage dated February 22, 1939, and duly recorded, had conveyed said 1¼-acre tract to Richard Grimsley as security for an indebtedness of $150.00. (2) The record of a deed from Richard Grimsley, Mortgagee, to defendant, purporting to convey said 1¼-acre tract pursuant to foreclosure sale on December 19, 1941, under said mortgage of February 22, 1939, at which defendant became the last and highest bidder at $150.00. This deed contains full recitals as to default, advertisement, failure to receive upset bid, payment of purchase price by defendant, etc. There was no evidence as to the fair market value of the 1¼-acre tract.

The only testimony was that of Mrs. Lyde Lassiter Baker, one of the plaintiffs. She testified that her grandparents, John J. Murphrey and wife, Eliza Murphrey, lived on the "homeplace" until John J. Murphrey died; and that Eliza Murphrey continued to live there until January 1, 1956, when she was taken to the hospital, during which time Willie Murphrey, one of her sons, resided with her. There was no testimony as to whether the 22½-acre tract, or the 1¼-acre tract, or both, constituted the "homeplace."

Plaintiffs' first cause of action relates to both of said tracts. Plaintiffs alleged a second cause of action, purporting to relate to a separate 5-acre tract; but plaintiffs' statement of case on appeal sets forth that "During the course of the trial it became apparent that the 5-acre tract was a part of the 22½-acre tract" and that "Plaintiffs took a voluntary nonsuit as to their second cause of action." At the close of plaintiffs' evidence, the court, allowing defendant's motion therefor, entered judgment of involuntary nonsuit. Plaintiffs excepted and appealed.

*Lewis & Rouse for plaintiffs, appellants.*
*I. Joseph Horton, K. A. Pittman and J. Faison Thomson & Son for defendant, appellee.*

BOBBITT, J.   It appears that Eliza J. Murphrey acknowledged the execution of her deed of January 7, 1928, to John J. Murphrey before "H. J. Brown, Deputy C.S.C.," whose certificate is in due form and includes the finding required by CS 2515, which, as amended, is now G.S. 52-12. Defendant's contention that a deputy clerk had no authority to make such finding is without merit. CS 2515 contemplated that the finding that the contract was not unreasonable or injurious to the married woman would be made by the officer before whom she was separately examined as to her execution of the deed. CS 3293, now G.S. 47-1, expressly authorized a deputy clerk of superior court to take such acknowledgment.

As to the 22½-acre tract, plaintiffs' contention that the decree of confirmation and deed, in the foreclosure action, are void as to them, is well taken.

Upon the death of an intestate, his real property descends to his heirs, subject to be sold, if necessary, to make assets to pay his debts. *Alexander v. Galloway,* 239 N.C. 554, 558, 80 S.E. 2d 369; *Linker v. Linker,* 213 N.C. 351, 353, 196 S.E. 329. As to mortgaged property, the heirs stand "in the place of their ancestor." *Fraser v. Bean,* 96 N.C. 327, 2 S.E. 159. As owners of the equity of redemption, they are necessary parties to an action for foreclosure of the mortgage. *Fraser v. Bean, supra; Chadbourn v. Johnston,* 119 N.C. 282, 285, 25 S.E. 705; *Hinkle v. Walker,* 213 N.C. 657, 197 S.E. 129; *Riddick v. Davis,* 220 N.C. 120, 125, 16 S.E. 2d 662; *Wilmington v. Merrick* 231 N.C. 297, 56 S.E. 2d 643; McIntosh, N. C. Practice and Procedure, § 233; 37 Am. Jur., Mortgages § 1129; 59 C.J.S., Mortgages § 627(e); Annotation: 119 A.L.R. 807 (As to whether the intestate's

personal representative is a necessary party, see *Geitner v. Jones,* 173 N.C. 591, 92 S.E. 493, and cases discussed therein.)

It has been held that the heirs are indispensable parties when the ancestor dies during the pendency of the action. 37 Am. Jur., Mortgages § 1129; 59 C.J.S., Mortgages § 631; 119 A.L.R. 809.

Defendant contends: "The death of a mortgagor after the decree of foreclosure, and before the sale thereunder, does not prevent such sale." 37 Am. Jur., Mortgages § 1147. This is true, but beside the point. In *Holden v. Dunn,* 144 Ill. 413, 33 N.E. 413, cited in support of the quoted text, after the decree of foreclosure, but before the sale thereunder, "notices of the decree were, pursuant to the statute, served upon the heirs of John W. Dunn and upon the administratrix of his estate." As to procedure on death of a party, see G.S. 1-75.

If plaintiffs, upon the death of John J. Murphrey, had been made parties to said foreclosure, they would have succeeded to his rights and status therein. Plaintiffs do not attack the validity of the judgment entered at June Term, 1941. But that judgment, in respect of its provisions for the sale of the 22½-acre tract by commissioners, was an interlocutory order. As stated by *Smith, C. J.,* in *Mebane v. Mebane,* 80 N.C. 34: "The commissioner acts as the agent of the Court, and must report to it all his doings in execution of its order. The bid is but a proposition to buy, and until accepted and sanctioned by the Court, confers no right whatever upon the purchaser. The sale is consummated when that sanction is given and an order for title made and executed." In an action to foreclose a mortgage, "confirmation is essential to the consummation of the sale of the lands by the commissioner appointed and acting under the order of the court." *Beaufort County v. Bishop,* 216 N.C. 211, 215, 4 S.E. 2d 525, citing many prior cases.

Plaintiffs, as parties in interest, were entitled to be heard as to whether the sale by the commissioners should be confirmed. Since they were not parties to the foreclosure action, the court, as to plaintiffs' interest in said 22½-acre tract, was without jurisdiction to decree confirmation. As to plaintiffs' interest, the decree of confirmation was void and the commissioners' deed to defendant did not convey title. Therefore, nothing else appearing, plaintiffs now own an undivided one-sixth interest in the 22½-acre tract, subject to said judgment and such liens as may be outstanding thereon. If and when plaintiffs intervene in such foreclosure action or are made parties thereto, the court may then resolve the question as to whether the sale by commissioners' on October 20, 1941, should be confirmed. See *Bank v. Stone,* 213 N.C. 598, 601, 197 S.E. 132, and cases cited.

Plaintiffs contend, alternatively, that, if the decree of confirmation and the commissioners' deed are held valid, defendant, by reason of his status as administrator, acquired and holds title to said 22½-acre tract as trustee for the heirs. However, having held the decree and deed void as to plaintiffs' interest, we do not reach this question.

The judgment of involuntary nonsuit dismissed plaintiffs' action in its entirety without referring specifically either to the 22½-acre tract or to the 1¼-acre tract. It is noted that plaintiffs' allegations as to both tracts were compounded in a single cause of action. In reversing the judgment of involuntary nonsuit, we express no opinion as to whether the meager evidence relating thereto was sufficient to make out a *prima facie* case as to the 1¼-acre tract, i.e., that defendant acquired and holds title thereto, in respect of plaintiffs' interest, as trustee for plaintiffs, subject to his right to reimbursement. The facts relating thereto may be more fully developed at the next hearing.

Reversed.